UNITED STATES of America ex rel. Lawrence WILLIAMS, Oscar Southall and Emanuel Williams, Petitioners–Appellees,

v.

Ernest MORRIS, Warden, Stateville Correctional Center; Thaddeus E. Pinkney, Warden, Pontiac Correctional Center; and People of the State of Illinois, Respondents–Appellants.

No. 80–1296.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1980.

Decided Oct. 22, 1980.

---

Michael B. Weinstein, Asst. Atty. Gen., Chicago, Ill., for respondents–appellants.

Sue A. Herrmann, Chicago, Ill., for petitioners–appellees.

Before CUMMINGS, SPRECHER and BAUER, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioners, who pleaded guilty in their state court criminal prosecutions, sought writs of habeas corpus claiming that state judges violated petitioners' Fourteenth Amendment rights by failing to inform them that a mandatory three–year parole term would automatically attach to the sentences they were promised under plea agreements. The petitions were consolidat-

ed below, and District Judge Prentice Marshall, finding *United States* ex rel. *Baker v. Finkbeiner*, 551 F.2d 180 (7th Cir. 1977), controlling, held that petitioners were entitled to relief. 447 F.Supp. 95 (N.D.Ill.1978) (*Williams I*).

On appeal, this Court reversed, holding that petitioners had failed to exhaust an available state court remedy. 594 F.2d 614 (7th Cir. 1979).[1] Petitioners thereafter renewed their requests for expungement of their mandatory parole terms, contending that a subsequent Illinois Supreme Court decision showed conclusively that no state court remedy was available. Judge Marshall agreed and for the reasons set forth in *Williams I* granted the relief sought. 483 F.Supp. 775 (N.D.Ill.1980) (*Williams II*). The State appeals on the merits.[2] We affirm in part and reverse in part.

### I

*Lawrence Williams*

Petitioner Lawrence Williams pleaded guilty in the Circuit Court of Cook County on March 11, 1975, to a single charge of burglary, which at the time carried a penalty of one to twenty years imprisonment plus a mandatory three–year parole term. Ill.Rev.Stat. Ch. 38, §§ 119–1, 1005–8–1(b)(3), 1005–8–1(c)(3), 1005–8–1(e)(2). Under the terms of a plea agreement reached by Williams' public defender and the prosecutor, Williams was to receive an indeterminate sentence of one to two years in prison.

Before accepting the guilty plea, the trial judge admonished Williams of its consequences, elicited Williams' understanding and acceptance of the terms of the plea agreement, and indicated that the court would accept the recommended sentence.

The judge then received Williams' acknowledgement that he understood the nature of the charges and his constitutional rights. A factual basis for the plea was established, and Williams indicated that he understood that by pleading guilty he admitted those facts. After advising Williams of the statutory penalty of one to 20 years imprisonment and hearing evidence in aggravation and mitigation of the offense, the trial judge sentenced Williams to not less than one nor more than two years in prison. The transcript contains no statement by the court, the prosecutor or the public defender that the recommended and actual sentence included a mandatory three–year parole term. Nor does the mandatory parole term appear on the sentencing order.

Williams completed his sentence on May 20, 1976, and was at that time released on parole. Williams claimed to have been unaware of the mandatory parole term until two months prior to his discharge. While serving the parole term, Williams was arrested on March 16, 1977, charged as a parole violator. He was reincarcerated at Stateville Correctional Center in Joliet, Illinois, on this charge when the Writ of Habeas Corpus was issued in *Williams I*. Before the denial of the State's Motion to Reconsider in *Williams I* took effect, Williams was released on a six months "mandatory supervisory release term" on February 1, 1978, pursuant to Ill.Rev.Stat. Ch. 38, § 1005–8–1. This revised law also had the effect of reducing Williams' parole term from three to two years. The period of mandatory release expired on August 1, 1978, at which time Williams was released from the custody of the Illinois Department of Corrections. He had been in the custody

---

1. We also held that the petitions were not moot by reason of the fact that two of the petitioners had completed their entire sentence periods including the added parole term and the other had been discharged in compliance with the order of the district court because there remained collateral consequences which might have lingering effects since all three petitioners were found guilty of parole violations. 594 F.2d at 615. See *Carafas v. LaVallee*, 391 U.S. 234, 238–240, 88 S.Ct. 1556, 1559–1560, 20

L.Ed.2d 554; *Sibron v. New York*, 392 U.S. 40, 50 58, 88 S.Ct. 1889, 1891–1900, 20 L.Ed.2d 917.

2. The State does not agree with Judge Marshall's conclusion on the exhaustion question but does not raise it on appeal because "none of the petitioners are presently in the custody of the Illinois Department of Corrections * * [and] are, therefore, precluded, by Illinois law, from filing a post–conviction petition" (Br. 12).

of the state for three years and four and one–half months, including 28 months in prison.

### Oscar Southall

Petitioner Oscar Southall pleaded guilty in the Circuit Court of Cook County on March 19, 1975, to a single charge of burglary carrying the same penalty of one to 20 years followed by three years of mandatory parole. Pursuant to the plea agreement reached by his public defender and the prosecutor and ratified by the court, Southall was to receive an indeterminate sentence of one to two years in prison. The proceeding at which the trial judge accepted Southall's plea and sentenced him to one to two years in prison does not differ significantly from the above–described proceeding involving Lawrence Williams. Again, the transcript contains no statement by the prosecutor, the public defender or the trial judge that the recommended and actual sentences included a mandatory three year parole term. Again, the sentencing order contains no reference to a mandatory parole term.

Southall completed his sentence and was released on parole on September 22, 1975. He was declared a parole violator on October 8, 1976, and reincarcerated. He was subsequently re–paroled and eventually discharged from the custody of the Illinois Department of Corrections on October 24, 1979. Southall had been in the custody of the state for approximately four years and seven months, including 23 months in prison.

### Emanuel Williams

Petitioner Emanuel Williams' case involves two guilty pleas. The first was entered on July 31, 1974, in the Circuit Court of Cook County to a charge of burglary carrying a penalty of one to 20 years imprisonment plus three years mandatory parole. Williams was sentenced in accordance with the prosecution's recommendation to one to three years in prison.[3] There is no indication in the transcript of the proceedings at which the plea was entered and Williams was sentenced that he was informed by his attorney, the prosecutor or the court that he would be subject to a mandatory parole term. There is no reference to a mandatory parole term in the sentencing order.

Two days later, on August 2, 1974, Williams entered a guilty plea in the same court to a charge of theft which, because it involved more than $150, carried a penalty of one to ten years imprisonment and a mandatory three–year parole term. The guilty plea was entered pursuant to an agreement between Williams' attorney and the prosecutor calling for a recommended sentence of one to three years in prison. The trial judge, who was not the same judge as in the July 31 proceeding, accepted the prosecution's recommendation in sentencing Williams, but did not participate in or ratify the plea agreement prior to accepting Williams' plea. The judge also warned Williams that a mandatory parole term was included in the maximum sentence for the charge to which Williams sought to plead guilty. He was not told that a mandatory parole term attached to the prison term negotiated by his attorney and the prosecution.

As a result of the two guilty pleas, Williams was imprisoned to serve concurrent sentences of one to three years. He was released on parole on August 23, 1976, but was returned to prison on December 10, 1976, for a parole violation. Williams was released again (on a $5,000 recognizance bond) following the decision in *Williams I*. His sentence, including the statutory parole term, expired on September 17, 1978. Williams had been in the custody of the state for approximately four years and four and one–half months, including 27 months in prison.

---

**3.** It is not clear from the transcript whether the recommended and actual sentences were made pursuant to a plea agreement or not. Judge Marshall initially found that the adequacy of the first guilty plea was not ripe for summary judgment. 447 F.Supp. at 105. Subsequently, he must have determined that the plea was made pursuant to a plea bargain because his order granted the relief sought with respect to this plea (State's Br. at A 7). In any event, the State does not challenge the order with respect to this plea on the basis of the factual record.

## II

In *United States* ex rel. *Baker v. Finkbeiner, supra,* this Court held that the failure to inform a state criminal defendant of a mandatory parole term accompanying his negotiated prison sentence violated the Due Process Clause of the Fourteenth Amendment. Baker had pleaded guilty to two criminal charges pursuant to a plea agreement ratified by the trial court under which he was told he would receive a sentence of one to two years in prison. He was never informed by his attorney, the prosecutor or the court that in actuality his sentence would include a mandatory two–year parole term. After his release from prison, Baker was arrested as a parole violator and reincarcerated. The district court denied his petition for collateral relief. This Court reversed, holding that the mandatory parole term constituted a substantial addition to the one to two years imprisonment Baker was promised and that therefore he had been deprived of the benefit of his plea bargain in violation of the Due Process Clause. We ordered the parole term expunged and Baker released from custody, reasoning that since Baker had performed his part of the bargain, the state should be held to its promise.

Before turning to the applicability of *Baker* to the petitioners here, we address the State's threshold argument that *Baker* must be overruled in light of *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634. *Timmreck* involved a federal defendant who pleaded guilty on advice of counsel to a charge carrying a maximum penalty of 15 years in prison and a $25,000 fine plus a mandatory parole term of at least three years. In the Rule 11 (Fed.R. Crim.Pro.) proceeding, the district court judge properly advised defendant of the maximum prison term and fine but failed to inform him of the mandatory parole term. The judge accepted Timmreck's guilty plea and in a later proceeding sentenced him to ten years in prison plus a parole term of five years and a fine of $5,000. Timmreck

neither objected to the sentence at the time it was pronounced nor appealed his conviction, but later moved to vacate the sentence on the ground that the trial judge had violated Rule 11 by accepting the plea without admonishing him of the mandatory parole term. The Supreme Court, reversing the Sixth Circuit, 577 F.2d 372, held that a technical violation of Rule 11 resulting in no prejudice to the defendant and which could have been raised on direct appeal will not support collateral relief. In so doing, the Court expressly declined to decide whether collateral relief "would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances." 441 U.S. at 784–785, 99 S.Ct. at 2088. Cf. *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417.

We think it plain from the foregoing summaries that the holding in *Baker* is in no way inconsistent with that of *Timmreck.* Unlike *Timmreck, Baker* involved not merely a technical violation of proper procedure but a complete failure to inform the defendant at any time that he would in fact be in the custody of the state for a period of three to four years (including parole) rather than the one to two years he had been promised. Moreover, unlike *Timmreck,* whose combined prison and parole terms were within the maximum penalty he had been warned he could receive and who had never been promised less than the maximum, Baker was prejudiced in that he received a sentence calling for two years of custody (on parole) more than he had bargained for. In short, the two cases are not only not "on all fours" as the State acknowledges, but wholly different. We therefore find no cause to reexamine the decision in *Baker.*

## III

The State's first alternative argument is that even if *Baker* is still good law, it is not applicable on its facts to the guilty plea of petitioner Southall or the second guilty plea of petitioner Emanuel Williams.[4] With re-

---

4. The State concedes that Lawrence Williams' case is factually indistinguishable from *Baker* (Br. at 22). As noted, *supra* note 3, the State does not challenge the factual applicability of *Baker* to Emanuel Williams' guilty plea of July 31, 1974.

spect to Southall, the State contends that since he had bargained for as much as three years in prison and actually served only 23 months, his case falls outside *Baker* and within *Bachner v. United States*, 517 F.2d 589 (7th Cir. 1975).

In *Bachner*, we held that the failure to inform a defendant of a mandatory parole term was not an error of constitutional magnitude where the sentence imposed did not exceed the maximum sentence the defendant was informed he would receive. What distinguishes *Bachner* from *Baker* is, first, that there was no plea agreement so that the defendant had no basis for expecting anything less than the maximum statutory sentence when he pleaded guilty and, second, that the sentence imposed including the mandatory parole term was within the maximum penalty defendant had been warned he could receive. Therefore, the defendant in *Bachner* was not prejudiced or deprived of the benefit of his plea bargain by the judge's failure to advise him of the mandatory parole term.

■■■ Southall's case is like *Baker*, not *Bachner*, in that Southall received a total sentence, including the three–year parole term, that exceeded the sentence he had bargained for and was promised. The State in effect asks us to ignore the additional parole term because Southall was actually incarcerated for less than the maximum three years of his negotiated plea. But, as we stated in *Baker*, "the conditions of parole place a number of onerous burdens on the liberty of paroled individuals," including the possibility of being returned to prison for technical parole violations. 551 F.2d at 184. While it is true that the defendant in *Baker* ended up spending 32 months in prison on a promised maximum sentence of two years imprisonment, it was the parole term itself with its concomitant burdens that we found to be a substantial addition to the negotiated sentence and not the additional time in prison resulting from the parole violation. In other words, a defendant does not have to violate his mandatory parole term and be reincarcerated for a

total period in excess of the maximum negotiated sentence before he can object under *Baker* that the sentence imposed differed substantially from that which he was promised as an inducement to plead guilty. See *United States* ex rel. *Ferris v. Finkbeiner*, 551 F.2d 185 (7th Cir. 1977).

■■■ With respect to Emanuel Williams' guilty plea of August 2, 1974, the State argues that *Bachner* is controlling because the trial court was not a party to any plea agreement. We agree. Although the trial judge at the time of sentencing accepted the prosecution's recommendation for a sentence of one to three years imprisonment "as per agreement" (Pets. Br., App. B, at 8), the agreement referred to was one between Williams' attorney and the prosecutor only. Because the trial judge neither participated in nor ratified the agreement prior to accepting Williams' plea, it was not binding on the court. Moreover, the judge explicitly so warned the defendant:

> The Court: Mr. Orange, also known as Mr. Williams, although an agreement as to the penalty has been reached between your attorney and the State's Attorney, the Court is not bound to accept those terms; I could impose a lesser or a greater penalty in this case. Do you understand this?
>
> Defendant: Yes, sir.
>
> The Court: Knowing that, do you still wish to plead guilty?
>
> Defendant: Yes. (Pets. Br., App. B, at 7–8).

Thus like the defendant in *Bachner* and unlike the defendant in *Baker*, Emanuel Williams had no basis for expecting anything less than the statutory maximum. He was warned of this maximum, including the mandatory parole term. Judge Marshall found this warning insufficient for the purposes of informing Williams that a mandatory parole term would be part of the plea he had negotiated with the prosecutor because it was made in the context of the maximum sentence Williams could get under the law. Whether this finding was

correct or, as the State contends, erroneous, we need not decide because there was no plea agreement binding on the court. Because the sentence imposed including the mandatory parole term was far less than the maximum period of imprisonment Williams was warned he could receive, he would not have been prejudiced even if the judge had failed to mention the parole term altogether. Indeed, that would be the *Bachner* case. Accordingly, we reverse the order with respect to Emanuel Williams' guilty plea of August 2, 1974.

### IV

 With respect to petitioners Southall and Lawrence Williams, the State's alternative position is that *Baker* established a new and unexpected rule of law entitled only to prospective application and was therefore erroneously applied here to guilty pleas entered prior to March 17, 1977, the date *Baker* was decided. The State raised this issue for the first time on a Motion to Reconsider in *Williams I*. Judge Marshall rejected the argument on the grounds that *Baker* did not create a new and unexpected rule of law and that even if it had it would be entitled to retroactive application under the balancing test set forth in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. See 447 F.Supp. at 105–108. We agree with both the reasoning and conclusion of Judge Marshall's thorough opinion on this issue and therefore adopt it as our own.

The judgment is reversed with respect to the August 2, 1974, guilty plea of petitioner Emanuel Williams and in all other respects affirmed.