**Nardell U. CARTER, Plaintiff-Appellee,**

v.

**Daniel McCARTHY, Midge Carroll, John K. Van De Kamp, Defendants-Appellants.**

No. 85–6299.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 30, 1986.

Decided Dec. 23, 1986.

William K. Rasmussen, Arcadia, Cal., for plaintiff-appellee.

Ernest Martinez, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellants.

Before ALARCON, BOOCHEVER and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

We resolve here a question previously unaddressed by this circuit, i.e., whether a guilty plea is voluntarily and intelligently made when the trial judge fails to inform the accused of a mandatory parole term concomitant to the sentence. We hold it is not.

Nardell Carter was arrested and charged in 1981 with forgery and possession of stolen checks. He pleaded guilty pursuant to a plea bargain under which he was to receive a two-year sentence. He was then sentenced to a two-year term in state prison. His conviction was subject to Cal.Penal Code § 3000(a) (Deering 1980), which imposes mandatory parole for a period not to exceed three years. The court failed to inform him of this requirement either at the time it accepted his plea or at the time it imposed sentence.

After serving about sixteen months of his sentence, Carter was released on a three-year parole term. Less than seven months later, he was arrested on charges of burglary and possession of stolen credit cards. Although the charges were dismissed for lack of evidence, the California Board of Prison Terms revoked Carter's parole and returned him to state prison where he served an additional year. About three months after his release, while still subject to the three-year parole term, Carter was arrested again on similar charges. The Board of Prison Terms again revoked his parole and placed him in custody for another year. By this time more than three years had elapsed since Carter had commenced serving his bargained-for two-year sentence and he had already spent two years and four months in prison.

Carter filed a petition for writ of habeas corpus in state court, naming Daniel McCarthy, director of the California Department of Corrections, as defendant. Carter asserted that the court's failure to inform him of the mandatory parole term at the time of his plea violated his due process rights. After exhausting his state remedies, Carter filed a petition for a writ of habeas corpus in federal district court.

A federal magistrate conducted a fact-finding hearing and recommended granting habeas relief. The district court adopted the magistrate's findings and recommendation, and issued a writ ordering that Carter be released from custody on any charges related to his parole violations. At that time, Carter had been incarcerated for almost ten additional months and had only two months left to serve in connection with

his second parole violation. McCarthy filed a timely appeal.

■ Generally, we review *de novo* the decision to grant or deny a petition for writ of habeas corpus. *See Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985). However, to the extent that we are required to review a magistrate's findings of fact and a district court's adoption of such findings, we apply a clearly erroneous standard. Fed.R.Civ.P. 52(a); *see United States v. Guido,* 597 F.2d 194, 197–98 (9th Cir.1979).

■ Constitutional protections of due process mandate that an accused's guilty plea be voluntary and intelligent. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). Because a guilty plea waives the rights against self-incrimination, to trial by jury, and to confront one's accusers, its acceptance requires the "utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Id.* at 243–44, 89 S.Ct. at 1712.

Determining the voluntariness of a plea involves a review of all the relevant circumstances surrounding it. *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Among other circumstances, a plea of guilty can be voluntary only if it is "entered by one fully aware of the *direct* consequences" of his plea. *Id.* at 755, 90 S.Ct. at 1472 (emphasis supplied). Thus the proper initial inquiry here is whether a mandatory parole term is a direct consequence of a guilty plea, or merely a collateral one. If a mandatory parole term is a direct consequence, we must then determine whether Carter was fully aware that he was subject to that additional penalty.

McCarthy asserts that all parole consequences are collateral and thus not afforded due process protection, citing *Hill v. Lockhart,* —— U.S. ——, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *United States v. Garcia,* 636 F.2d 122, 123 (5th Cir.1981) (per curiam); *Hunter v. Fogg,* 616 F.2d 55, 61 (2nd Cir.1980); *Strader v. Garrison,* 611 F.2d 61, 63 (4th Cir.1979). These cases are readily distinguished. Each deals with the failure to inform a defendant of when he will become eligible for release from incarceration under the sentence he received, not with the failure to inform him of the existence of a separate parole term to be served following service of that sentence. The date of eligibility for parole relates to the time at which the sentence actually imposed may in effect be reduced, at least insofar as the requirement for serving time in prison is concerned. Early release is purely discretionary and provides a benefit to the prisoner—a reduction in the period of confinement. On the other hand, a mandatory parole term involves the imposition of an additional adverse consequence upon the defendant—a substantial period of time during which his freedom is limited significantly commencing *after* the defendant has served his sentence of imprisonment.

A California appellate court has held that a mandatory parole term imposed pursuant to the same statute involved here, Cal.Penal Code § 3000, is "an inexorable penal consequence" of a guilty plea. *In re Carabes,* 144 Cal.App.3d 927, 930–31, 193 Cal. Rptr. 65 (1983). In addition, the Seventh Circuit has held that the failure to inform a defendant of a mandatory parole term is a violation of due process, implicitly recognizing it to be a direct rather than a collateral consequence of a guilty plea. *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180 (7th Cir.1977); *United States ex rel. Johnson v. DeRobertis,* 718 F.2d 209, 210–11 (7th Cir.1983).[1]

1. The facts of *Baker v. Finkbeiner* are almost identical to those present here. Baker agreed to plead guilty in exchange for a promise that his sentence would not exceed two years. His attorney, the prosecutor and the trial judge all failed to inform him that Illinois law required that he serve two years of parole after his prison term ended. The Seventh Circuit held that Baker's guilty plea was subject to collateral attack if the sentence actually imposed differed significantly from the sentence promised him. 551 F.2d at 183. The court went on to find that a

■ We agree with the view expressed in *In re Carabes* and implicitly recognized by the Seventh Circuit. Where a criminal statute imposes a mandatory parole term to be served following completion of the period of confinement, the parole term necessarily is a direct consequence of the guilty plea. Here, Cal.Penal Code § 3000(a) requires a period of parole to be served following completion of the period of incarceration; Carter's parole term is thus a direct consequence of his plea.

■ McCarthy argues that parole is not mandatory because the same section allows the Board of Prison Terms to waive parole. *Id.* Waiver, however, is a positive act solely within the discretion of the Board, in the absence of which the parole remains mandatory. *See In re Carabes,* 144 Cal.App.3d at 931, 193 Cal.Rptr. 65. More important, for purposes of determining whether a plea is voluntarily and intelligently made, the critical fact is not that the imposition of the parole term is mandatory but that the parole term is to be served in addition to the term of confinement under the sentence. In these circumstances, the judge handling the criminal proceedings must advise the defendant, *inter alia,* of the maximum period his liberty may be restrained both by way of imprisonment and parole.

■ Under *Brady,* we need still determine whether Carter was "fully aware" of the direct consequence of his plea. *Brady v. United States,* 397 U.S. at 755, 90 S.Ct. at 1472. Here, the magistrate specifically found that Carter did not know of the requirement of a mandatory parole term.

The district judge agreed. We have reviewed the record and the findings carefully. While on the basis of the written record we might not have reached the same conclusion as the magistrate and the district court, we do not have the benefit of having observed the witnesses; nor can we substitute our judgment as to the facts for that of the district court. Given all of the circumstances present here, we cannot hold that the finding below is clearly erroneous. Inasmuch as Carter was not fully aware of the direct consequences of his guilty plea, the plea was not voluntary and intelligent; acceptance of the plea in these circumstances was a violation of Carter's constitutional right of due process.[2]

■ *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), is not to the contrary. In *Timmreck,* the Supreme Court held only that a claim of a violation of Federal Rule of Criminal Procedure 11 is not sufficient, without more, to support a collateral attack on a defendant's conviction. *See also Wayne v. Raines,* 690 F.2d 685, 687 (9th Cir.1982) (applying *Timmreck* to a violation of a state rule of criminal procedure). While *Timmreck,* like the case before us, involved a failure to inform the defendant prior to his guilty plea of the requirement of a mandatory parole term, Timmreck's "only claim [was] of a technical violation of the Rule." 441 U.S. at 784, 99 S.Ct. at 2087. Unlike Carter, Timmreck did not argue that he was unaware of the mandatory parole term or that he would not have pleaded guilty had he known.[3] In short, he

---

two-year parole term was a significant addition to his sentence, and concluded that the failure to inform Baker of the mandatory parole term violated his due process rights. *Id.* at 184.

2. This case also involves the violation of a state rule of criminal procedure. Under California law, the state trial judge must inform the defendant of a mandatory parole term that will follow service of a determinate sentence. Cal. Penal Code § 1170(c). Our circuit has held that a collateral attack based on a violation of a state rule of criminal procedure will succeed, and a due process violation will be found, when the petitioner shows that he was prejudiced or that

his rights were affected thereby. *Wayne v. Raines,* 690 F.2d 685, 687 (9th Cir.1982) (state rule of criminal procedure required disclosure of parole eligibility limitations prior to accepting guilty plea). It is clear, therefore, that were we to rest our decision on the state rule violation, we would not avoid the constitutional question. Accordingly, we see no reason to rely on that alternative ground.

3. Timmreck's claim of a Rule 11 violation was termed only a "technical" one for an additional reason. The sum of the prison sentence and parole term imposed did not exceed the maximum sentence that the judge informed

did not contend that his plea was involuntary or that his constitutional rights were violated.[4]

■ Because we have found constitutional error here, we apply the rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *arguendo*, and consider whether the state met its burden of showing beyond a reasonable doubt that the error was harmless. Under *Chapman*, constitutional errors do not automatically require reversal of a conviction; an otherwise valid conviction will not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Id.* at 24, 87 S.Ct. at 828; *Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). However, the harmless error rule does not benefit the state in this case. At Carter's factfinding hearing, the magistrate found that had Carter known of the mandatory parole term, he would not have pleaded guilty. The district judge agreed. As with the other factual determinations, we cannot conclude that the finding of fact was clearly erroneous. In view of the finding that knowledge of the parole requirement would have altered Carter's plea, the constitutional error was clearly not harmless.

■ Next, McCarthy contends that the district court should have remanded the case to state court to make the requisite factual findings instead of accepting those made by a federal magistrate. Remand to a state court may under some circumstances be appropriate where that court has previously made evidentiary findings on the particular matters at issue. Here, the

state courts summarily dismissed Carter's petitions without an evidentiary hearing. In such cases, the district court must hold its own evidentiary hearing. 28 U.S.C. § 2254(d).

■ There remains the matter of remedy. In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Court held that where a petitioner has relied on a promise by the state in a plea agreement which has not been fulfilled, either withdrawal of the plea or specific performance of the agreement may be an appropriate remedy. *Id.* at 263, 92 S.Ct. at 499. McCarthy asserts that *Santobello* requires us to remand the proceedings to the state court so that it may make a choice between those remedies. While the Court in *Santobello* did order a remand, it did not hold that remand was appropriate in every case, or as a general course. *See, e.g., Lane v. Williams*, 455 U.S. 624, 630, 102 S.Ct. 1322, 1326, 71 L.Ed.2d 508 (1982). Since Carter has already served a sentence well in excess of the one for which he bargained, leave to withdraw his plea would clearly be of no benefit to him. We see no reason to remand a habeas case to state court where there is no choice to be made and but one possible order to be issued. Moreover, had the district court failed to act as it did, Carter might well have completed service of his illegal sentence before he received the relief to which he was entitled. The district court was correct in not remanding the proceeding to the state court and in ordering that Carter be released from any further service under the parole term.

AFFIRMED.

---

Timmreck he could receive. In Carter's case, the period of limitation on his freedom exceeded the maximum period he was advised he would receive at the time of the plea.

**4.** There is another reason why *Timmreck* is inapplicable and why the parole term imposed on Carter cannot be enforced. *Timmreck* did not involve a plea-sentence agreement, i.e., a plea of guilty in exchange for a promise that a specific sentence would be ordered or that the sentence would not exceed a particular term. *See United States ex rel. Johnson v. DeRobertis*, 718 F.2d 209, 210 (7th Cir.1983). When a promise or

agreement by the prosecutor is part of the consideration inducing a defendant's plea, a sentence that exceeds the promise cannot be enforced over the defendant's objections. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Carter agreed to plead guilty in return for a sentence of two years' imprisonment. Instead, he received a sentence of two years' imprisonment and an additional three-year parole term. The parole term exceeded the sentence Carter had been promised.

ALARCON, Circuit Judge, concurring:

I concur for the reasons set forth in footnote 2 of the court's opinion.